IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| SKYROS, INC., ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:16-cv-02255-STA-tmp |
| ) | |
| MUD PIE, LLC, ) | |
| Defendant. ) | |
| ) | |

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PRELIMINARY INJUNCTION
AND
ORDER REGARDING MOTION FOR BOND**

On April 20, 2016, Judge S. Thomas Anderson entered an order granting Plaintiff Skyros, Inc.'s ("Skyros") ex parte motion for a temporary restraining order ("TRO"). (ECF No. 8.) Skyros filed a Motion for Preliminary Injunction on April 29, 2016. (ECF No. 17.) On May 2, 2016, the Court held a preliminary injunction hearing to determine whether to convert the existing TRO into a preliminary injunction. (Min. Entry, ECF No. 22.) For the reasons that follow, the Court GRANTS IN PART and DENIES IN PART the preliminary injunction.

**I. BACKGROUND**

**A. Factual Background**

This case concerns alleged breaches of a settlement agreement between Skyros and Mud Pie, LLC ("Mud Pie"). Skyros alleges that prior to March 26, 2015, Mud Pie "designed,

1

purchased and offered for sale copies of Skyros's distinctive [dinnerware] designs, including . . . Mud Pie's Signature Collection line of products." (Compl. ¶ 14, ECF No. 1.) Skyros and Mud Pie entered into a Settlement and Limited License ("Settlement Agreement") on March 26, 2015. (Compl. ¶ 22; see also Settlement Agreement, ECF No. 1-1.) Under the terms of this agreement, Mud Pie was permitted to advertise and sell its existing inventory of Signature Collection line Dessert Plates, Oval Platters, and Soap Dishes until August 31, 2015. (Settlement Agreement ¶ 3.) Mud Pie also agreed to cease advertising and selling products with substantially similar designs, although Mud Pie was permitted limited advertising rights as to the Signature Line products through August 31, 2015. (Settlement Agreement ¶¶ 3-4.) Skyros alleges Mud Pie violated the Settlement Agreement when it sold and advertised its "Signature Collection" dinnerware in retail stores, through its website, and through Amazon.com, as well as through other third-party retailers. (Compl. ¶¶ 31, 54.) Skyros seeks damages and attorney's fees, as well as injunctive relief. (Compl. ¶ 55.)

### B. Procedural Background

On April 18, 2016, Skyros filed a complaint against Mud Pie. (ECF No. 1.) On April 19, 2016, Skyros filed an Ex Parte Application for Entry of Temporary Restraining Order, seeking to

enjoin Mud Pie from selling the Signature Collection and to compel Mud Pie to contact third-party retailers where Signature Collection pieces are being offered for sale and demand that the third-party retailers cease all sales of Signature Collection Pieces. (ECF No. 6.) Judge Anderson granted the TRO on April 20, 2016. (ECF No. 8.)

On April 29, 2016, Skyros filed a Motion for Preliminary Injunction. (ECF No. 17.) Mud Pie responded in opposition on April 30, 2016. (ECF No. 18.) The Court held a preliminary injunction hearing on May 2, 2016. (Min. Entry, ECF No. 22.) On May 6, 2016, Mud Pie submitted four supplemental declarations in opposition to the motion for preliminary injunction. (ECF No. 24.) On May 11, 2016, Skyros responded in opposition to Mud Pie's supplemental declarations. (ECF No. 35.) Mud Pie filed a reply brief on May 13, 2016. (ECF No. 37.)

On May 6, 2016, Skyros filed a brief regarding the posting of bond pursuant to Rule 65 of the Federal Rules of Civil Procedure. (ECF No. 29.)[1] Mud Pie responded in opposition on May 15, 2016. (ECF No. 39.)

On May 12, 2016, Mud Pie filed an Answer and Counterclaims, asserting the following causes of action: (1) breach of the Settlement Agreement, (2) breach of the duty of good faith and

---

[1] This filing is docketed as a "Motion for Bond," but appears to be a supplemental brief regarding bond in response to the Court's instructions at the preliminary injunction hearing. (See Min. Entry, ECF No. 22; ECF No. 29.)

3

fair dealing, (3) misrepresentation of a material contract term, (4) a declaration of non-infringement, (5) a declaration of copyright invalidity and unenforceability, (6) cancellation of Skyros's United States copyright registrations, and (7) intentional interference with business relationships. (ECF No. 36 at PageID 468-72.)

## II. STANDARD OF REVIEW

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981). "Accordingly, a party 'is not required to prove his case in full at a preliminary injunction hearing and the findings of fact and conclusions of law made by a court granting the preliminary injunction are not binding at trial on the merits.'" Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 542 (6th Cir. 2007) (quoting Camenisch, 451 U.S. at 395).

Four factors are used by the Sixth Circuit to determine whether injunctive relief is appropriate: (1) the likelihood of success on the merits; (2) whether the injunction will save the movant from irreparable injury; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the injunction. Id.

"These four considerations are factors to be balanced, not prerequisites that must be met." Id. (internal quotation marks omitted). No one factor is dispositive. In re DeLorean Motor Co., 755 F.2d 1223, 1228 (6th Cir. 1985). The burden of persuasion is on the party seeking the injunctive relief. See Stenberg v. Cheker Oil Co., 573 F.2d 921, 925 (6th Cir. 1978).

**III. ANALYSIS**

**A.  Objection to Skyros's Supplemental Briefing**

As an initial matter, Mud Pie objects to Skyros's post-hearing response (ECF No. 35) as untimely and improperly raising new legal theories. (ECF No. 37 at 1-3.)

At the preliminary injunction hearing, the Court ordered Mud Pie to submit supplemental documentation regarding the relationship between Mud Pie and a store in Frisco, Texas, bearing the Mud Pie name by Friday, May 6, 2016. (See Min. Entry, ECF No. 22.) The Court instructed Skyros to respond by Tuesday, May 10, 2016, but to notify the Court if it needed more time to respond. On May 10, 2016, Skyros notified the Court that it intended to respond by the close of business on May 11, 2016. (See ECF No. 32.) Skyros then filed its response on May 11, 2016. (See ECF No. 35.) Accordingly, the Court finds that Skyros's response in opposition to Mud Pie's supplemental declarations was timely.

5

Additionally, at the preliminary injunction hearing, it was apparent that Skyros believed the Frisco, Texas, store to be owned and operated by Mud Pie. When Mud Pie explained at the preliminary injunction hearing that the Frisco store is an independent entity that licenses Mud Pie's name and logo, the Court ordered Mud Pie to submit supplemental documentation. Skyros's response to the supplemental declarations was Skyros's first opportunity to address this issue. Accordingly, Skyros did not waive the argument that the Frisco store, although a separate legal entity, should be considered equivalent to Mud Pie. Thus, the Court rejects Mud Pie's contention that the response was improper and considers the arguments made in Skyros's response to the supplemental declarations.

**B.  Likelihood of Success on the Merits**

In its Complaint, Skyros alleges that Mud Pie breached the Settlement Agreement by advertising and selling the allegedly-infringing Signature Collection line products, and by using associated entities to circumvent the Settlement Agreement. (See Compl. ¶ 54.) The TRO enjoined Mud Pie from selling the Signature Collection through its retail brick-and-mortar stores, through its e-commerce website, and through third-party internet retailers. (ECF No. 8 at 1.) Mud Pie was also required to contact third-party retailers and demand that they immediately cease sales of any and all unsold Signature Collection products.

(Id. at 1-2.)  In the instant motion, Skyros seeks only to enjoin Mud Pie from advertising the challenged products, based on Paragraphs 3, 4, 8, 9, and 14 of the Settlement Agreement. (ECF No. 17-1 at 1.)  The Court, therefore, considers only Skyros's likelihood of success as to its claim for breach of contract based on advertising.

To succeed on a breach of contract claim in Tennessee, a plaintiff must show (1) the existence of a contract; (2) nonperformance amounting to a breach of that contract; and (3) damages caused by the breach of the contract.  Life Care Ctrs. of Am., Inc. v. Charles Town Assocs. Ltd. P'ship, 79 F.3d 496, 514 (6th Cir. 1996).

It is undisputed that the Settlement Agreement constitutes a valid contract.  Thus, the Court considers only whether Mud Pie's actions constitute a breach of the Settlement Agreement and whether Skyros suffered damages as a result of those actions.

1. **Breach of Settlement Agreement**

Paragraph 3 of the Settlement Agreement grants Mud Pie "a limited license to advertise . . . pieces of the accused infringing Signature Collection line's Dessert Plate, Oval Platter, and Soap Dish" until August 31, 2015. (Settlement Agreement ¶ 3.)  Pursuant to Paragraph 4, "Mud Pie agree[d] that the advertisement of the accused infringing Signature Collection

7

line shall be limited to printed advertisements generated on or before February 12, 2015 and website advertising limited to the scope of advertisement Mud Pie was conducting on or before February 12, 2015." (Id. ¶ 4.) Additionally, Mud Pie was prohibited from causing or directing the creation of additional printed advertisements and from using any advertisements with the accused infringing Signature Collection line past August 31, 2015. (Id.)

Paragraph 8 provides in pertinent part:

> Mud Pie and its officers, agents, employees and attorneys, and all persons in active concert and participation with them hereby agree and stipulate that they will not intentionally and/or knowingly . . . cause to be . . . advertised[] or promoted . . . goods that infringe the copyrights of Skyros.

(Settlement Agreement ¶ 8(a).)

Skyros argues that Mud Pie breached the Settlement Agreement by (1) displaying images of the challenged products on its e-commerce website on September 1, 2015, (2) displaying images of the challenged products on its e-commerce site and social media pages in February and March 2016, and (3) displaying the challenged products at the Mud Pie retail store in Frisco, Texas, in April 2016.

### a. Images on Website in September 2015

Skyros submits an email thread between its attorney, Julie Ellis, and Mud Pie's counsel, Robert Madayag, III, from

8

September 2015.  (ECF No. 17-2; see also Trial Ex. 7, ECF No. 23.)  In an email dated September 1, 2015, Skyros asserts that Mud Pie violated the Settlement Agreement by failing to take down all images of challenged products by August 31, 2015.  (ECF No. 17-2 at PageID 141-42.)  Mud Pie confirmed that the images were removed on September 2, 2015.  (Id. at PageID 140.)

Skyros will likely be able to demonstrate that the use of these images past the license term constituted "advertisements under Mud Pie's control with the accused infringing Signature Collection line" in violation of paragraph 4, and possibly other provisions, of the Settlement Agreement.

### b. Images on e-Commerce and Social Media Sites in February and March 2016

Skyros also submits screenshots of Mud Pie's Facebook, Instagram, Pinterest, and Twitter accounts from March 1, 2016 (ECF No. 17-3; Trial Ex. 9, ECF No. 23) and April 29, 2016 (ECF No. 17-4; Trial Ex. 12, ECF No. 23).  These screenshots demonstrate that Mud Pie maintained images of the challenged products on its social media pages after the limited license expired on August 31, 2015.

At the evidentiary hearing, Mud Pie appeared to argue that because Mud Pie does not pay for its social media accounts and because the posts did not include hyperlinks to the Mud Pie e-commerce website, these images did not constitute

9

"advertisements."  This argument is not persuasive.  Companies do not gratuitously post images of their products on social media.  Rather, the purpose of these posts is to market the companies' products.  Accord CFE Racing Prods., Inc. v. BMF Wheels, Inc., 793 F.3d 571, 582 (6th Cir. 2015) (noting that "Defendants also market their products through social media").

Mud Pie also argues that the Settlement Agreement permits it to use "printed advertisements generated on or before February 12, 2015 and website advertising limited to the scope of advertisement Mud Pie was conducting on or before February 12, 2015."  (ECF No. 18 at 11.)  Mud Pie, however, quotes this provision out of context.  The Settlement Agreement permitted Mud Pie to advertise in this manner "through the License Term."  (Settlement Agreement ¶ 4.)  The Settlement Agreement explicitly provides that "Mud Pie shall not use any advertisements under Mud Pie's control with the accused infringing Signature Collection line past the License Term."  (Id. (emphasis added).)

Moreover, the term "use" appears to contemplate broader action that "creating" new advertisements.  Because the social media posts remained "active" on the social media pages, visible to the public, they likely constituted "use" of advertisements with the accused infringing products.

In the instant case, Skyros has a strong likelihood of success as to its claim that Mud Pie's social media posts

violated paragraph 4, and possibly other provisions, of the Settlement Agreement. Paragraph 4 specifically states that "Mud Pie shall not use any advertisements under Mud Pie's control with the accused infringing Signature Collection line past the License Term." (Settlement Agreement ¶ 4.) Skyros will likely be able to demonstrate that the maintenance of the social media posts at issue constitutes the "use" of advertisements with the challenged products past the license term.

### c. Retail Store Display in April 2016

Skyros also submits the declaration of Sam Sawyer, an individual who visited the "Mud Pie" store in Frisco, Texas, on April 29, 2016. (Sawyer Decl. ¶ 3, Trial Ex. 13, ECF No. 23.) Sawyer states that the "Mud Pie" store displayed and sold the challenged Signature Collection products. (Sawyer Decl. ¶¶ 3-4.) Sawyer also took photographs, one of which showed a "new design" platter on display, with an "old design" platter below it. (Ex. A, Sawyer Decl.) Sawyer also photographed a soap dish and towel set that used the challenged design. (Id.) Sawyer ultimately purchased the challenged products, and the receipts of purchase, as well as the original products and packaging, were presented at the preliminary injunction hearing. (Trial Exs. 14-20.)

Paragraph 8 of the Settlement Agreement prohibits "agents" and "all persons in active concert and participation with" Mud

Pie from "intentionally and/or knowingly" selling or offering for sale the challenged products. (Settlement Agreement ¶ 8.) Mud Pie asserts that the Frisco store is an independent business owned by Beggernaut, LLC, is outside of Mud Pie's control, and is merely authorized to use Mud Pie's name and logo. (Pannek Second Decl. ¶¶ 2-4, 9-10, 12-13, ECF No. 24-1; Ex. D at PageID 237, ECF No. 24-1; see also ECF Nos. 24-2, 24-3, 24-4.)

Skyros asserts that

> although Beggernaut claims to be independent, it has significant constraints on its business by Mud Pie, and in return, receives significant benefits from Mud Pie for its loyalty, including the receipt of Mud Pie marketing materials, assistance on store design, and access to a dedicated Mud Pie customer service representative.

(ECF No. 35 ¶ 15.)

Although Skyros refers to statements on Mud Pie's website to support this contention (see, e.g., id. ¶ 6), it does not sufficiently demonstrate that the Frisco store is an "agent" or a "person in active concert and participation with" Mud Pie subject to the restrictions in paragraph 8 of the Settlement Agreement. Accordingly, Skyros has not shown that it is likely to succeed on its claim that the brick-and-mortar sales at the Frisco store constitute a breach of the Settlement Agreement.

### 2. Damages Resulting From Breach

At the preliminary injunction hearing, Kathy Pitts, the President of Skyros, testified that several customers

independently informed her in January 2015 that Mud Pie was selling dinnerware products under its Signature Collection line with a very similar design to the Skyros Historia line. This information prompted her to contact Mud Pie, and ultimately led the parties to enter into the Settlement Agreement on March 26, 2015.

Pitts testified that Skyros's Historia line products are manufactured with high-quality materials in Portugal, while Mud Pie's products are less expensive and are made in China. Although Pitts could not provide the precise monetary impact, she testified that Mud Pie's continued advertising and sales of the challenged products dilutes Skyros's sales. For example, according to Pitts, at one of Skyros's retail customers, approximately 35% of the wedding registries include the Historia dinnerware line. Several of these registries also list the challenged Mud Pie platter, but none list the Skyros platter. Pitts believes that more customers may have registered for the Skyros platter had the challenged Mud Pie platter not been an option.

Because a number of customers contacted Pitts after noticing the similarities between the Skyros and Mud Pie dinnerware, it is very likely that Mud Pie's continued online advertising using images of the challenged products is

negatively impacting Skyros's business, reputation, and customer good will.

For these reasons, Skyros has established a strong likelihood that Mud Pie infringed the Settlement Agreement provisions as to online advertising but not as to the brick-and-mortar store displays.

**B. Irreparable Injury**

Skyros argues that Mud Pie's continued advertisement of the challenged products harms its reputation and customer goodwill. (ECF No. 17-1 at 6-7.) Specifically, Skyros asserts that "[e]very representation by [Mud Pie] that it can offer product substantially similar to Skyros's at a lower price than Skyros's drives potential Skyros customers to [Mud Pie's] website or stores." (Id. at 6.) Additionally, Skyros argues that Mud Pie's advertisements of cheaper versions of Skyros's designs harms Skyros's reputation as a high-end manufacturer of dinnerware. (Id. at 7.) As discussed above, Pitts testified that several customers separately approached her to inform her that Mud Pie was offering products with similar designs. Pitts also testified that many individuals regularly "register" for both Skyros's Historia line products and Mud Pie's challenged products.

The Sixth Circuit has recognized that "the loss of fair competition that results from the breach of a non-competition

covenant is likely to irreparably harm an employer." FirstEnergy Sols. Corp. v. Flerick, 521 F. App'x 521, 529 (6th Cir. 2013) (quoting Basicomputer Corp. v. Scott, 973 F.2d 507, 512 (6th Cir. 1992)). Similarly, "[t]he loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute." Basicomputer, 973 F.2d at 512; see also Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc., 453 F.3d 377, 382 (6th Cir. 2006) ("In [trademark] cases . . . , the harm stems not from the actual quality of the goods (which is legally irrelevant) but rather from [the markholder's] loss of control over the quality of goods that bear its marks." (citation omitted)).

The Settlement Agreement in the instant case is analogous to a non-competition agreement in the employment context. The Settlement Agreement gave Mud Pie a limited window to advertise and sell the challenged products, and restricted advertisement and sales outside of that time window to ensure fair competition. The loss of goodwill and fair competition stemming from the alleged breach of the Settlement Agreement are difficult to value. There is ample evidence to demonstrate, however, that Skyros would be irreparably harmed if Mud Pie's advertisements succeed in luring customers or even merely affecting customer perceptions as to Skyros's quality or ability to protect its intellectual property.

Accordingly, the Court finds that Skyros would suffer irreparable injury absent issuance of a preliminary injunction.

**C.    Substantial Harm to Others**

With regard to substantial harm to others, Mud Pie argues that "the portion of the injunction requiring Mud Pie to attempt to cease the sales of third-parties unrelated to Mud Pie would be to violate their rights under the 'first sale doctrine' of the Copyright Act."  (ECF No. 18 at 15.)  Mud Pie also argues that an injunction prohibiting Mud Pie's customers from re-selling the challenged products "fails to take into consideration the fact that, if those are products that were purchased from Mud Pie during or before the license period, Skyros has already been compensated for those products by virtue of Mud Pie's license payments to Skyros."  (Id. at 16.)

Mud Pie misunderstands Skyros's request for a preliminary injunction.  Unlike Skyros's motion for a TRO, Skyros's motion for a preliminary injunction does not pertain to third-party sales of the challenged products.  Skyros seeks only to enjoin Mud Pie or entities covered by the Settlement Agreement from advertising the challenged products.

The harm to Skyros "should the preliminary injunction not be issued must be weighed against the harm to others from the granting of the injunction."  See United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth., 163

16

F.3d 341, 363 (6th Cir. 1998). In the instant case, Skyros has established a strong likelihood that Mud Pie breached the Settlement Agreement and that it would suffer irreparable harm should Mud Pie continue to advertise and sell Signature Collection pieces.

In contrast, the potential harm to others is relatively slight. A preliminary injunction merely "preserve[s] the relative positions of the parties," and "findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." <u>Camenisch</u>, 451 U.S. at 395. Moreover, the preliminary injunction is limited in scope. It will enjoin only Mud Pie from advertising the challenged products. The injunction will not impact unrelated third-party entities which, as Mud Pie points out, were not parties to the Settlement Agreement. As discussed above, the injunction will not enjoin the Frisco store from displaying or offering for sale the challenged products.[2]

Accordingly, this factor weighs in favor of a preliminary injunction.

**D. Public Interest**

"[T]he public interest is always served in the enforcement of valid restrictive covenants contained in lawful contracts."

---

[2] If evidence demonstrating that the Frisco store is an "agent" or a "person in active concert and participation with" Mud Pie, as defined in the Settlement Agreement, is later discovered, the preliminary injunction may be subject to modification.

FirstEnergy, 521 F. App'x at 529 (alteration in original) (quoting Nat'l Interstate Ins. Co. v. Perro, 934 F. Supp. 883, 891 (N.D. Ohio 1996)). Because Skyros has established a strong likelihood that Mud Pie's online advertising violates the Settlement Agreement, the public interest also favors issuance of a preliminary injunction.

### E. Balance of the Factors

Having considered the relevant preliminary injunction factors, the Court finds that they weigh in favor of issuance of a preliminary injunction. The preliminary injunction should be limited in scope and enjoin only Mud Pie from engaging in advertising in violation of the Settlement Agreement.

### F. Appropriateness of Bond

Skyros argues that no bond should be required because "there is no proof of any likelihood of harm to" Mud Pie as a result of this injunction. (ECF No. 29 at 3.) Alternatively, Skyros proposes a nominal bond of $5,000.00. (Id. at 5.) Mud Pie argues that "[i]f a bond is not required, the TRO is a one-way proposition, and Skyros shares no burden that comes with the abridged Court inquiry, lack of discovery, and unsubstantiated legal theories." (ECF No. 39 at 3.) Mud Pie seeks a bond of $50,000.00 to "balance Skyros' benefit in attaining a Court order at this early stage and the risk of damages that Mud Pie

will face if Skyros does not prevail on its claims." (Id. at 4.)

The Court finds that only a nominal bond is necessary in this instance. A district court may "require no bond where there has been no proof of likelihood of harm." Doctor's Assocs., Inc. v. Stuart, 85 F.3d 975, 985 (2d Cir. 1996) (citation and internal quotation marks omitted); see also Kentuckians for the Commonwealth v. U.S. Army Corps Of Eng'rs, No. 3:12-CV-00682-TBR, 2013 WL 5278236, at *5 (W.D. Ky. Sept. 18, 2013). Mud Pie has not presented any evidence that it will suffer harm as a result of this preliminary injunction. The preliminary injunction merely prevents Mud Pie from advertising products that it has already agreed not to sell or advertise. Unlike the TRO, the injunction has no effect on Mud Pie or any third-party entity's sales.[3] As a result, Mud Pie should suffer minimal out-of-pocket costs to remove the online advertisements and will not lose any profits. Because there is no proof of any likelihood of harm, the Court requires Skyros to post only a nominal bond of $5,0000.00 in connection with the preliminary injunction.

---

[3] Under the terms of the TRO, Mud Pie was enjoined from selling Signature Collection products and was required to demand that third-party retailers also cease sales of Signature Collection products. (ECF No. 8 at 1-2.) The TRO was entered on April 20, 2016, and expired fourteen days later, on May 4, 2016. (See id. at 2.) Skyros did not request an extension of the TRO.

**IV. CONCLUSION**

For the reasons stated above, the Court grants in part Skyros's Motion for Preliminary Injunction. The Court hereby ENJOINS Defendant and its officers, employees, and agents, and all persons in active concert and participation with them, from advertising, promoting, and offering for sale the challenged Signature Collection using images and displays that violate the terms of the Settlement Agreement, including any such advertising or promotions on the Internet, including but not limited to Defendant's e-commerce website, social media platforms, and email blasts; and any and all such paper advertising, including but not limited to Defendant's catalogs. This Order shall remain in place until such time that the Court can make a final determination regarding the claims for relief and request for permanent injunction and damages set forth in Plaintiff's Verified Complaint for Temporary Restraining Order, Permanent Injunctive Relief, and Damages ("Verified Complaint") (ECF No. 1). Skyros shall post a bond of $5,000.00 in connection with this Order by no later than Friday, June 10, 2016.

**IT IS SO ORDERED**, this 3rd day of June, 2016.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE