IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| SKYROS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:16-cv-02255-STA-tmp |
| ) | |
| MUD PIE, LLC, ) | |
| ) | |
| Defendant. ) | |

## ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR CONTEMPT

Before the Court is Plaintiff Skyros, Inc.'s Motion for Contempt (ECF No. 51) filed on June 24, 2016. Defendant Mud Pie, LLC has responded in opposition. The Court held a motion hearing on July 7, 2016. For the reasons set forth below, Plaintiff's Motion is **GRANTED** but only in part.

### BACKGROUND

Plaintiff filed a Verified Complaint for breach of contract on April 18, 2016. According to Verified Complaint, Plaintiff is engaged in the design and sale of copyrighted dinnerware, including specific designs known commercially as the Historia Collection. In February 2015, Plaintiff learned that Defendant had a similar line of dinnerware and marketed its products under the trade name of the Signature Collection. Plaintiff notified Defendant about possible copyright infringement based on similarities between Defendant's Signature Collection and Plaintiff's Historia Collection. The parties thereafter entered into a settlement agreement in March 2015 whereby Plaintiff granted Defendant a limited license to sell the Signature Collection through

August 31, 2015. Defendant agreed to discontinue its product line and cease selling and advertising the design after September 1, 2015. Defendant redesigned its Signature Collection and obtained Plaintiff's approval for the new, non-infringing design, which Defendant continues to market as its Signature Collection.[1] The Verified Complaint alleges that Defendant has continued to use images of the infringing design in its marketing and has therefore breached the terms of the settlement agreement between the parties.

The Court granted Plaintiff's *ex parte* motion for a temporary restraining order on April 20, 2016, and Plaintiff filed a motion for preliminary injunction on April 29, 2016. United States District Judge Jon P. McCalla conducted an injunction hearing on May 2, 2016, and issued an order granting in part and denying in part Plaintiff's motion for preliminary injunction on June 3, 2016. Based on his factual findings and his conclusion that Plaintiff was likely to succeed on the merits of its claim, Judge McCalla's order specifically enjoined the following acts:

> Defendant and its officers, employees, and agents, and all persons in active concert and participation with them, from advertising, promoting, and offering for sale the challenged Signature Collection using images and displays that violate the terms of the Settlement Agreement, including any such advertising or promotions on the Internet, including but not limited to Defendant's e-commerce website, social media platforms, and email blasts; and any and all such paper advertising, including but not limited to Defendant's catalogs. This Order shall remain in place until such time that the Court can make a final determination regarding the claims for relief and request for permanent injunction and damages set forth in Plaintiff's Verified Complaint for Temporary Restraining Order, Permanent Injunctive Relief, and Damages ("Verified Complaint") (ECF No. 1).

In its Motion for Contempt, Plaintiff alleges that Defendant has violated the preliminary

---

[1] The Verified Complaint describes Defendant's former design simply as "the Signature Collection," and the new design, which does not appear to be part of the parties' dispute, as the "2016 Signature Collection." Judge McCalla's preliminary injunction refers to the former design as "the challenged Signature Collection." Because Plaintiff's Motion for Contempt concerns a violation of the preliminary injunction, the Court will adopt Judge McCalla's term "challenged Signature Collection" for the sake of clarity and consistency.

injunction in two ways. First, Plaintiff recently accessed a picture of a piece of dinnerware from the challenged Signature Collection on Defendant's Instagram account. Plaintiff argues that Defendant's use of a photograph of the prohibited item violated the Court's preliminary injunction. Second, Defendant used an image of a piece from the challenged Signature Collection at a trade show in Dallas, Texas, on June 23, 2016. According to a declaration from Diane Duffy Thompson, Plaintiff's director of sales, Defendant displayed at the trade show a sample of its new Signature Collection design alongside a "point of sale" card with a small, low-resolution photo of the product, a bar code, and other information to facilitate an order. The point of sale card, however, depicted not the new design but one of the pieces from the challenged Signature Collection. Thompson asked Defendant's representative at the trade show about the point of sale card and confirmed that if she placed an order for the product, she would receive the product along with a copy of the point of sale card. Plaintiff argues that each of Defendant's acts violates the preliminary injunction. Plaintiff requests that the Court find Defendant in contempt of the preliminary injunction and award Plaintiff $50,000 as a monetary sanction and as well as its attorney's fees and costs.

Defendant has filed a written response in opposition. With respect to the photo on its Instagram account, Defendant states the picture has now been removed. Defendant does not dispute that the picture contained an image of the disputed design but argues that the picture does not constitute "advertising" due to the nature of the post. The photo was a charitable promotion for the March of Dimes, and the platter in question was covered with food. Defendant argues that it undertook extensive efforts to scrub the internet of any trace of the challenged Signature Collection pieces and to ensure that it was in compliance with the preliminary injunction. For support Defendant cites the declaration of Fred Pannek, Defendant's president.

According to the declaration, Defendant instructed its third-party website designer to remove all of the prohibited images from Defendant's website and destroy any images in the files kept by the designer.[2] The items in the challenged Signature Collection are only four of the 10,000 items in Defendant's full line of products. Pannek directed Defendant's e-commerce manager to locate and save all images on the company's files to preserve them as evidence in this case.[3] Pannek also instructed Defendant's e-commerce manager, the social media coordinator, and the public relations director to search the internet for any other prohibited images and permanently remove them.[4] Defendant's employees discovered videos on YouTube briefly showing the prohibited products and deleted them.[5] Defendant subsequently instructed the videographer who had produced the videos to destroy them so that there would be no chance of the videos reappearing in future productions.[6] Defendant took additional steps to have third-parties who might have any images of the prohibited products in their posts or files to remove them.[7] Despite Defendant's efforts to comply with the preliminary injunction, the single Instagram photo simply was not caught in time.

As for the point of sale card, Defendant does not deny that the point of sale card at the Dallas trade show depicted one of the pieces from the challenged Signature Collection. Again relying on Pannek's declaration, Defendant states that the cards were produced in early 2015

---

[2] Pannek Decl. ¶ 4 (ECF No. 56).

[3] *Id.* ¶ 6.

[4] *Id.* ¶ 8.

[5] *Id.* ¶ 11.

[6] *Id.* ¶ 12.

[7] *Id.* ¶¶ 13-15.

4

before the dispute over the copyrighted dishware ever arose. The cards were stored in Defendant's retail showrooms in Dallas, Atlanta, and Las Vegas. Once the injunction issued, Pannek directed all showroom personnel to gather the cards with the prohibited items and destroy them. According to his declaration, Pannek specifically directed that the cards not be used at the upcoming Dallas trade show and that no point of sale cards for the Signature Collection be used at all. If counsel for Plaintiff had contacted counsel for Defendant about the cards prior to filing its Motion, Pannek would have taken immediate steps to have the cards removed from the Dallas trade show. As soon as Defendant was served with the Motion for Contempt, Pannek gave instructions to remove the cards from the Dallas trade show and have them destroyed. According to Pannek, Defendant sold $2,338 worth of the dishware from its Signature Collection at the Dallas trade show.

The Court received additional arguments from the parties at the motion hearing. Plaintiff argued that Defendant's Instagram photo and use of the point of sale cards clearly violated the preliminary injunction and that Defendant had not carried its burden to explain its inability to comply.[8] While Defendant claims its efforts to comply with the injunction were reasonable, Defendant could not explain why it was unable to detect the Instagram photo, which was posted in April 2016. Defendant did not hire an outside consultant to direct or assist its efforts to comply, and Defendant has not indicated what additional follow-up it conducted after the image was discovered. Defendant has also failed to explain why it used the point of sale cards

---

[8] Plaintiff noted that even before filing its Motion for Contempt, counsel for Plaintiff had brought to counsel for Defendant's attention the presence of two other videos on YouTube. At oral argument, counsel for Plaintiff described counsel for Defendant's initial reluctance to remove the videos, though Defendant ultimately did remove the videos from the site. Counsel for Defendant briefly addressed the situation in his part of the oral argument as well. The Court need not address this specific instance further. Plaintiff's Motion for Contempt does not raise the issue as grounds for sanctions against Defendant.

continuously from January 2015 and never bothered to reorder or redesign the cards to remove the image from the challenged Signature Collection. The Pannek Declaration is noticeably silent as to whether Defendant has as yet removed the same point of sale cards from its showrooms in Atlanta and Las Vegas. Defendant has in effect minimized its violations of the Court's order. Plaintiff argued that it should not fall to Plaintiff to police Defendant and ensure its compliance with the preliminary injunction. Plaintiff contended then that a monetary sanction of $50,000 would force Defendant to take its obligations seriously.

In its arguments to the Court, Defendant emphasized the size of its company, its 130 employees, and its line of 10,000 products distributed through multiple channels with digital images circulated widely. Defendant acknowledged that the photo did appear on Instagram but explained that despite Defendant's best efforts, the photo was overlooked. Defendant also acknowledged that the point of sale card contained an image of one piece from the challenged Signature Collection. Defendant argued, however, that the purpose of the point of sale card was not advertising but simply to facilitate an order at the trade show. Defendant emphasized that the standard for contempt is not perfection but reasonableness. According to counsel, Defendant destroyed or removed thousands of photographs. Defendant believes that its efforts to comply with the preliminary injunction were reasonable. Therefore, no sanctions are warranted.

The Court received sworn testimony from one witness at the motion hearing. Plaintiff introduced the testimony of its director of sales, Diane Duffy Thompson. Concerning the Instagram post, Thompson testified that she discovered the photo in about 15 minutes of searching Defendant's social media sites. Thompson also testified about the gift and dinnerware industry and the role of the large trade shows in promoting product lines. Thompson attended the Dallas trade show in June 2016, which drew more than 200,000 visitors over seven days.

According to Thompson, Defendant's exhibit at the trade show included a point of sale card with an image of a piece from Plaintiff's Historia Collection. Thompson went on to testify about the uses of a point of sale card at trades shows like the one in Dallas. Point of sale cards not only promote sales at trade shows, but they are also routinely included in shipments of merchandise to retailers. The retailers in turn display the point of sale card alongside merchandise in their showrooms and/or sales brochures. Point of sale cards are stored for use in showrooms and warehouses. At the Dallas trade show, Thompson asked Defendant's agent at the exhibit about the point of sale card and was informed that a point of sale card would be included with her order. Thompson did not actually place an order.

Thompson conceded on cross-examination that her testimony was based on her experience in the dinnerware industry and not on any personal knowledge about Defendant's use of point of sale cards. Thompson clarified that she saw only one point of sale card with the image of the disputed design and that the actual piece on display beside the point of sale card was the new Signature Collection design. Thompson went on testify on re-direct that each vendor operates differently at trade shows. One vendor may report total sales for the show, and another vendor may report only orders placed for immediate shipment. Point of sale cards can generate additional sales beyond a trade show as retailers use them on their own showrooms.

## STANDARD OF REVIEW

"When a court seeks to enforce its order or supervise its judgment, one weapon in its arsenal is contempt of court."[9] "Contempt proceedings enforce the message that court orders and

---

[9] *Elec. Workers Pension Tr. Fund of Local Union |58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378-79 (6th Cir. 2003)).

judgments are to be complied with in a prompt manner."[10] The Supreme Court has described the power "to punish for contempts" as "a necessary and integral part of the independence of the judiciary" and "absolutely essential to the performance of the duties imposed on them by law."[11] As such, "[a] court's ability to issue injunctions, and then enforce those injunctions with a finding of contempt, springs from the court's inherent equitable powers."[12] A civil contempt sanction may serve the purposes "to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained."[13]

A party moving for civil contempt has "the burden of establishing by clear and convincing evidence that [the non-moving party] 'violated a definite and specific order of the court requiring [the non-moving party] to perform or refrain from performing a particular act or acts with knowledge of the court's order.'"[14] A court must resolve any ambiguities in the prior order in favor of the party charged with contempt.[15] In the absence of some ambiguity, a court decrees "mean rather precisely what they say."[16] Perhaps not surprisingly, "[t]here is no

---

[10] *Paterek v. Village of Armada, Mich.*, 801 F.3d 630, 643 (6th Cir. 2015) (citing *NLRB v. Cincinnati Bronze, Inc.,* 829 F.2d 585, 588 (6th Cir. 1987)).

[11] *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 450 (1911).

[12] *CFE Racing Prods., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 598 (6th Cir. 2015) (citing *Porter v. Warner Holding Co.*, 328 U.S. 395, 398(1946) (other citation omitted).

[13] *Gary's Elec. Serv. Co.*, 340 F.3d at 379 (quoting *United States v. United Mine Workers of Am.,* 330 U.S. 258, 303–04 (1947)); *see also Gnesys, Inc. v. Greene*, 437 F.3d 482, 493 (6th Cir. 2005) (quoting *NLRB v. Cincinnati Bronze, Inc.,* 829 F.2d 585, 588 (6th Cir. 1987)).

[14] *CFE Racing Prods.*, 793 F.3d at 598 (quoting *Rolex Watch U.S.A., Inc. v. Crowley,* 74 F.3d 716, 720 (6th Cir. 1996)).

[15] *Paterek*, 801 F.3d at 643 (citing *United States v. Conces*, 507 F.3d 1028, 1042 (6th Cir. 2007)).

[16] *Id.* (citing *Grace v. Ctr. for Auto Safety,* 72 F.3d 1236, 1241 (6th Cir. 1996)).

requirement to show intent beyond knowledge of the order."[17] "Since the purpose [of civil contempt] is remedial, it matters not with what intent the defendant did the prohibited act."[18] In other words, "[g]ood faith is not a defense in civil contempt proceedings."[19]

## **ANALYSIS**

The Court finds Defendant in contempt of the preliminary injunction. Plaintiff has shown by clear and convincing evidence that Defendant violated the terms of the preliminary injunction. The preliminary injunction clearly and unambiguously enjoined "advertising, promoting, and offering for sale the challenged Signature Collection using images and displays that violate the terms of the Settlement Agreement." The preliminary injunction specifically prohibited "any . . . such promotions on the Internet, including but not limited to Defendant's . . . social media platforms" and paper advertising." The undisputed evidence shows that Defendant had a photograph of one piece of the challenged Signature Collection posted to its Instagram account. The undisputed evidence further shows that Defendant used a point of sale card at a recent trade show in Dallas, Texas, which contained an image of a piece of the challenged Signature Collection. Based on the evidence, Plaintiff has carried its burden to show that Defendant violated the preliminary injunction.

The burden now shifts to Defendant to show that it "is *presently* unable to comply" with the preliminary injunction.[20] In order to satisfy its burden, Defendant "must show categorically

---

[17] *CFE Racing Prods.*, 793 F.3d at 598 (quoting *In re Jaques,* 761 F.2d 302, 306 (6th Cir. 1985)).

[18] *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949).

[19] *Greene*, 437 F.3d at 493 (citing *Glover v. Johnson*, 934 F.2d 703, 708 (6th Cir. 1991)).

[20] *Gary's Elec. Service Co.*, 340 F.3d at 379 (quoting *United States v. Rylander*, 460 U.S. 752, 757 (1983)).

and in detail" why it could not comply.[21] Defendant has not shown that it was unable to comply with the preliminary injunction. Instead, Defendant has stressed that it took all of the reasonable measures it could to comply with the preliminary injunction. The Sixth Circuit has stated that "[w]hen evaluating a defendant's failure to comply with a court order, we also consider whether the defendant 'took all reasonable steps within [its] power to comply with the court's order.'"[22]

While Defendant has shown that it undertook efforts to obey the preliminary injunction, Defendant has not shown why its efforts failed to prevent the violations of the preliminary injunction it has now admitted. To explain its open violation of the Court's order, Defendant has shown through the Pannek declaration that management directed others to purge the images online and printed point of sale cards in Defendant's showrooms. However, Pannek does not indicate what steps Defendant took to ensure that the directions were actually followed. The undisputed proof shows that they were not: Plaintiff's director of sales discovered the Instagram post in a matter of minutes, and the point of sale cards were hiding in plain sight at what is a major trade show. The Court cannot find that Defendant "took all reasonable steps within its power to comply." Therefore, the Court finds that Defendant is in civil contempt of the preliminary injunction.

As a sanction for Defendant's civil contempt, Plaintiff requests a monetary award of $50,000.00. The Court has no proof before it to support such a significant award for what is a first offense based on nothing more than Defendant's negligence. Although Defendant's willfulness is not relevant to the finding of civil contempt, Defendant's "state of mind . . . is

---

[21] *Id.* (quoting *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996)).

[22] *Gary's Elec. Service Co.*, 340 F.3d at 379.

relevant to mitigation of any penalty that might be imposed."[23] Under the circumstances, the Court declines to impose a monetary sanction of $50,000. The evidence does show that at the Dallas trade show, Defendant sold approximately $2,300 worth of merchandise in connection with its use of the point of sale card with the prohibited image. Other proof showed that point of sale cards could generate future orders as well and that the $2,300 sales figure may not represent all sales at the trade show. In light of this proof, the Court finds that a monetary sanction of $10,000.00 will compensate Plaintiff "for losses sustained" while at the same time serve the remedial purpose of coercing Defendant's compliance in the future.[24] Therefore, the Court awards Plaintiff a monetary sanction of $10,000.00.

Plaintiff has also requested an award of its attorney's fees and costs in connection with its Motion for Contempt. That request is granted. Plaintiff is ordered to file a fee petition showing her time devoted to the Motion for Contempt. Plaintiff's Motion for Contempt is **GRANTED in part**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: July 26, 2016.

---

[23] *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 383 (6th Cir. 2006) (*Rogers v. Webster,* 776 F.2d 607, 612 (6th Cir. 1985)).

[24] *United Mine Workers of Am.,* 330 U.S. at 303–04.